## SCOVILLE BROTHERS *v.* VARNER *et al.*

The act of December 24th, 1832 (Acts of 1832, p. 207), conferring jurisdiction upon the justices of the peace of the Indian Springs district of Butts county to remove obstructions from the streets of the Indian Spring (or McIntosh) Reserve, is not applicable to the walks and promenades on the ten-acre lot embracing the mineral spring.  The streets referred to in this act were those laid out in the plan of subdivision of the original McIntosh Reserve in conformity with the act of 1827 (Acts of 1827, p. 119).

Argued November 23. 1904. — Decided January 27, 1905.

Certiorari.  Before Judge Roan.  Butts superior court.  June 25, 1904.

*Marcus W. Beck* and *Mills & Wall,* for plaintiffs in error.

*O. M. Duke, Dessau, Harris & Harris,* and *Pope S. Hill,* contra.

EVANS. J.   Misses Joe and Amanda Varner caused a summons to be issued by the justice of the peace of the Indian Spring district of Butts county, directed to Levi and George Scoville, requiring them to appear at the next justice's court to answer the complaint of the Misses Varner for the removal of an obstruction from a street of the Indian Spring Reserve. Attached to the summons was the complaint of the plaintiffs, which alleged, in substance, that the defendants were conducting a hotel business and were residents of said district; that they had obstructed a street extending from the hotel of the Misses Varner to the spring, the obstruction being immediately in front of the Wigwam Hotel, conducted by the defendants; that this street had been used by plaintiffs and the guests at their hotel for more than twenty years, had been in existence as far back as the year 1817, and had been constantly and uninterruptedly used as an approach to the spring by plaintiffs and their ancestors during all that period of time; and that the obstruction was of such a character as to render it impossible for invalid guests of plaintiffs to reach the spring, and such as to render it impossible for any person to reach the spring by means of this street without climbing over the obstruction. It was alleged that demand had been made on the defendants to remove the obstruction, which they failed and refused to do. Plaintiffs asked for an order requiring the removal of the obstruction, and for a judgment in behalf of themselves and the county school commissioner of Butts county for two dollars for each day since the erection of the obstruction. The summons was served on the defendants, who appeared and filed a plea to the jurisdiction, on the ground that they were residents of Fulton county and not of the Indian Spring district, which plea was held insufficient and was stricken by the court. The defendants then interposed a demurrer to the complaint, on the grounds, that the court had no jurisdiction of the subject-matter, the superior court of Butts county alone having jurisdiction thereof, under the act of 1889 (Acts of 1889, pp. 171–2); and that the State of Georgia was a necessary party, and there was a nonjoinder of parties. The magistrate overruled this demurrer. The defendants thereupon filed their answer, in which they denied obstructing any street, and in which they alleged that they were lessees from the State of Georgia of the Indian Spring Reserve,

and only amenable to the State under their lease contract for any act done by them with reference to the improvement and control of the Indian Spring Reserve. After hearing evidence, the magistrate adjudged that the structure complained of amounted to an obstruction, and ordered its removal. The defendants sued out a writ of certiorari, assigning error on the judgment of the magistrate overruling their demurrer, on the admission of certain testimony, and on the final judgment rendered on the merits. When the certiorari came on to be heard in the superior court, it was overruled, and the defendants bring the case here for review.

What is known as the Indian Spring (or McIntosh) Reserve was acquired by the State of Georgia from the Creek Indians by the treaty of 1825. A subdivision of the reserve into lots and streets, and the sale of all the lots except one containing the spring, was authorized by the act of December 22, 1827. Acts of 1827, p. 119. The plan of subdivision was that the mineral spring should be included, as nearly as possible, in the center of a square lot of ten acres, and around this lot there were to be laid off two successive ranges of lots, containing two acres, intersected by streets of not less than thirty-three feet in width, running east and west, north and south, at right angles; next to the range of two-acre lots there was to be laid off around them a range of four-acre lots; and next to the range of four-acre lots, still another range of lots was to be laid off, each lot to contain not less than twenty nor more than thirty acres; and the balance of the reserve was to be surveyed into lots of not less than thirty nor more than fifty acres. All the lots were to be separated from each other by streets. To prevent encroachment upon and obstruction of the streets laid out in conformity with this act, the justices of the peace of the Indian Spring district of Butts county were given jurisdiction to remove any house, fence, or other obstruction placed in such streets, at the expense of the individual placing the same in said streets or using and occupying the same. Acts of 1832, p. 207. The justices of the peace of this district were not only empowered to remove obstructions from the streets, but the penalties imposed by the act were collectible in the justice's court of that district by suit at the instance of an informer. Subsequently the legislature authorized the commissioners of the Indian Spring Reserve to sell such of the streets as they might deem not

of public use for streets. Acts of 1838, p. 142. The legislative scheme was to dedicate to public use the ten-acre lot containing the mineral spring. This lot was set apart as a park or place of rendezvous for members of the general public attracted to the spring. The approach to the ten-acre lot was by means of the streets intersecting the surrounding lots, and the summary proceeding by the justice of the peace to remove obstructions from the streets of the reserve related to the streets laid out under the act of 1827. It was never contemplated in any of the statutes or resolutions of the General Assembly relating to the Indian Spring (or McIntosh) Reserve that permanent streets should be established within the lot embracing the spring. Thus, in the lease acts of 1847 and 1869 (Acts of 1847, p. 193; Acts of 1869, p. 174), the lessees were empowered to make roads, promenades, and walks, and to plant flower gardens, on such portions of the grounds as they might select as best adapted and calculated to render the grounds more pleasant and useful, with the proviso that roads or paths of ample width, admitting an easy approach to and from the spring should be at all times kept open for public use. The present lease act (Acts of 1889, p. 171) imposes on the lesses the duty to "lay out and maintain walks upon the said reserve, and build and keep in repair all bridges and approaches to the spring;" and declares that "the public shall be permitted to use said water at the spring and to carry it to hotels, boarding-houses, and private residences for use." The "walks" which the lessees in the various lease acts were empowered to lay out were not "streets," but promenades or approaches to the spring. The lease act of 1889 requires of the lessees that roads of ample width, admitting an easy approach to and from the spring, shall at all times be kept open for public use. The fifth section of that act makes the violation of any of its provisions a cause of forfeiture of the lease contract, but there can be no ouster of the lessee until after final judgment of forfeiture in the superior court of Butts county. Whether the remedy provided by the act of 1889 for the obstruction of an approach to the spring be confined to an action to forfeit the lease, it is certain that as to obstruction of ways within the ten-acre reservation itself the remedy provided in the act of 1832 is not applicable. This latter act relates solely to an obstruction of the permanent streets established in the plan of sub-

division of the original reservation, and not to roads, walks, and promenades on the ten-acre lot.

The act of 1838 did not authorize the sale of all the streets previously laid out by virtue of the act of 1827, but only those which were unused at the time or which the commissioners of the Indian Spring Reserve did not deem of public advantage. As to these unsold streets, the jurisdiction of the justice of the peace of the Indian Spring district, given by the act of 1832, may still obtain; but as to the particular subject-matter involved in the case under review, the magistrate was without jurisdiction. If, then, as affirmatively appears on the face of the pleadings, the court wherein the case originated had no jurisdiction of the subject-matter, the entire proceeding before the justice of the peace should, by a court of review, be treated as an absolute nullity. *Blocker* v. *Boswell*, 109 *Ga.* 239. Direction is accordingly given that the judgment excepted to be set aside, and that the superior court remand the case to the justice's court with instructions to dismiss the action.

*Judgment reversed, with direction. All the Justices concur.*