## BARRETT v. BREWER.

(Filed November 13, 1906).

*Infants—Adverse Possession—Possession by Father—Presumption—Evidence—Exceptions and Objections—Instructions—Motion to Dismiss.*

1. In an action of ejectment, where the sister of plaintiffs, who held a deed for a tract of land, died in infancy without ever having entered on the land, and thereafter their father, who lived on a different tract, took possession of the land and held it until his death, when the plaintiffs entered into possession: *Held,* the father will not be presumed to have entered in behalf of his children, where there was no evidence that he professed to do so, and none that they had any title, but at most only color of title, and his possession will not enure to them so as to perfect any colorable title they may have had as against a stranger.

2. An appellant is not bound to except to an instruction when there is no evidence to warrant it, and he has already moved to dismiss the action.

ACTION by R. A. Barrett and others against Robert Brewer and others, heard by *Judge G. W. Ward* and a jury, at the April Term, 1906, of the Superior Court of MONTGOMERY.

The plaintiffs brought this action to recover possession of a tract of land and damages for withholding the same. They introduced a deed from Alexander McQueen to George Bryant, dated 8 February, 1862, and a deed from George Bryant to Josephine Barrett, dated 5 February, 1870. These deeds covered the land in dispute. Plaintiffs then proved that Josephine Barrett, who was their sister, was born in 1864 and died in 1872, without ever having entered upon the land, and that the plaintiff R. A. Barrett was born in 1866, J. D. Barrett in 1872, Charlotte McArthur in 1873 or 1874, Ruhamah McNeill in 1876, and Mary L. Barrett in 1887 or 1888, and it appears that Maud M. Barrett and R. G. Barrett are now minors and appear in this action by their next friend,

U. L. Barrett. All of said plaintiffs are the children of Robert W. Barrett, and lived with their father at his home on another tract of land, until his death, which occurred in the year 1897. Evidence was then introduced by the plaintiffs tending to show that their father took possession of the land in controversy in 1881 or 1882 and cut timber on it or worked the trees for turpentine by himself or his tenants until his death in 1897, when the plaintiff R. A. Barrett entered into possession for himself and his co-plaintiffs and had timber cut on the land. That there was no part of the land cleared prior to 1897, when R. W. Barrett died. The defendants introduced a grant from the State to the defendant Frank Brewer and H. A. Johnson, dated 15 October, 1891, and a deed from the grantee, H. A. Johnson, to C. A. Brewer, who was one of the defendants, and they claimed title under the grant and deed which covered the land. They also introduced evidence tending to show that R. W. Barrett and the plaintiffs after him did not, as the plaintiffs alleged and attempted to prove, have adverse possession of the land, but that they, and those claiming under and for them, had been in the adverse possession of it since the grant was issued in 1891 and had cleared and cultivated a part of it and worked the trees for turpentine. That they ousted Martin Black, the tenant of Robert W. Barrett.

The defendants' counsel moved, at the close of the plaintiffs' testimony and again at the close of all the testimony, to dismiss the action under the statute. Their motion was overruled, and they excepted. Defendants' counsel also requested the Court to charge, among other things, that if the jury believed the evidence they should find that the land belonged to Frank Brewer and H. A. Johnson in October, 1891. This instruction was refused, and they again excepted.

The Court charged the jury as to what was required in this State to constitute title to land and explained to the jury what

is meant by adverse possession, and further explained, as the case states, "the force and bearing of Robert W. Barrett taking possession for his children," to which there was no exception. It does not appear, though, what his Honor said in this connection. The Court further instructed the jury that the possession of Robert W. Barrett prior to the date of the State grant, 15 October, 1891, could not be considered, but only the possession of the plaintiffs, if they had any, since that time; and then told the jury if they found that the plaintiffs had been in adverse possession of the land under color of title from 15 October, 1891, to the spring of the year 1899, they should answer the first issue, as to the ownership and right to the possession of the land, "Yes." The usual issues in ejectment were submitted. There was a verdict for the plaintiffs, and the defendants moved for a new trial upon exceptions taken to the several rulings of the Court as to evidence, the refusal to give instructions and the instructions given, and also to the refusal to nonsuit the plaintiffs. The motion was denied and judgment entered upon the verdict; whereupon the defendants excepted and appealed.

*U. L. Spence* for the plaintiff.
*J. A. Spence* and *R. T. Poole* for the defendant.

WALKER, J., after stating the case: It was conceded that if the plaintiffs' counsel cannot avail themselves of their father's possession of the land, they cannot recover. The argument before us in this case indicated that the Court had charged the jury to presume that Robert W. Barrett went into possession of the land and held it for his minor children, because during the time of his occupancy they lived together as members of the same family, and as he was their father and therefore was under the duty and obligation to look after all their affairs, and as they had color of title. We do not think this proposition can be sustained, and after diligent

search we have not been able to find any authority sustaining it; and yet it must be upheld in order to affirm the judgment, as there is no evidence that the father actually took possession of the land for his children. Indeed, the testimony tends to show that he was acting for himself. In *Campbell v. Everhart,* 139 N. C., 517, we stated, incidentally though not decisively, the general rule to be that, as between persons occupying parental or filial relations, the possession of one is presumed to be permissive and not adverse to the other who holds the title. But in that case the parties were living together as one family on the same tract of land, it being the *locus in quo,* while here the plaintiffs did not live with their father on the land in dispute, but on a different tract and, as stated in the argument, in another county. It may also be said that in that case the controversy was one between the father and his children, and the question presented was whether the father's possession was adverse to the children so as to have the effect of barring their right by the lapse of time, while here the dispute is between the children and a stranger, the former claiming by virtue of the alleged adverse possession of their father. *Clark v. Trindle,* 52 Pa. St., 492; *Allen v. Allen,* 58 Wis., 202; *McDougal v. Bradford,* 80 Tex., 558. The two cases are therefore entirely different. Here Josephine Barrett had a deed for the land which constituted color of title. She did not enter under this deed, and died at the age of eight years. The plaintiffs were not in actual possession of the land prior to the death of their father in 1897. They therefore had no title under which he could rightfully enter as their agent or trustee, but at the most only color of title, provided that they acquired the right to claim under the deed to their sister, Josephine Barrett, by virtue of descent cast, she not having had any seizin during her lifetime.

The case, therefore, presents this question: Will the father be presumed to have entered in behalf of his children, when

there is no evidence that he professed to do so, and none that they had any title, but at most only color, which would make his entry a trespass from the start? Is he presumed to have trespassed on another's land and to have subjected himself to a suit for damages by the true owner in order to ripen the colorable title of his children into a good and perfect one by continuing to hold the possession a sufficient length of time for that purpose? We think this would be pushing the doctrine of presumption a great way, and that the father cannot under the given circumstances be presumed to have been acting for his children. He may be in a certain sense their natural guardian or protector, but no such duty as that supposed can be held to rest upon him. His possession commenced by disseizin, and if it had continued long enough it might have ripened into a good title, but it would have been a title which accrued to him, and not to his children.

When there is a mixed possession by several persons the law adjudges the legal seizin to be in him who has the title. *Hall v. Powell,* 4 Serg. & R., 465; *Langdon v. Potter,* 3 Mass., 219; *Codman v. Winslow,* 10 *ibid.,* 151; *Com. v. Dudley, ibid.,* 408; *Cheney v. Ringgold,* 2 Har. & J. (Md.), 87-94; Newell on Ejectment, p. 366. But no such case is presented here, as the possession was taken and maintained by the father apparently for himself, and besides, during the time he was in possession of the land the plaintiffs did not have the title, nor were they the owners of it, but they had merely a deed to their sister, which they claimed to be color of title.

We held in *Francis v. Reeves,* 137 N. C., 269, that there is no presumption that the husband is the agent of his wife and acting for her, and we do not see why we should hold that the father is the agent of his children and acting for them when he takes possession of land and commits a trespass in doing so. Is there anything in the relation of parent and

child which casts the duty upon him of committing a trespass in their behalf so as to raise a presumption that in such a case he is acting for them? We think not. There being no evidence that Robert Barrett was acting for his children and none from which such an inference should be drawn, his possession did not enure to them so as to perfect any colorable title they may have had.

The defendants were not bound to except to the instruction as to the "force and bearing of R. W. Barrett's possession for his children," as there was no evidence to warrant the same, and they had already moved to dismiss the action.

The Court should, therefore, have granted the defendant's motion to nonsuit the plaintiffs under the statute, and in refusing to do so there was error, for which the judgment is reversed and the action dismissed.

Reversed.