A04A0435. DUNCAN et al. v. HARCOURT.

(599 SE2d 196)

BLACKBURN, Presiding Judge.

In this case involving a complaint for ejectment and criminal trespass, Jeffrey W. Duncan and Kelley O'Shea Duncan (the "Duncans") appeal the trial court's grant of summary judgment to Raymond B. Harcourt and the denial of their own motion for partial summary judgment, arguing that the trial court erred because: (1) affidavits of possession recorded prior to the Duncans' predecessors in title cannot establish written title and boundaries by historical monuments; (2) Harcourt cannot establish the elements required for acquisition of property through adverse possession; and (3) there are disputed issues of fact. The Duncans also argue that the trial court erred in denying their motion for partial summary judgment because: (4) the property lines are certain and Harcourt is liable for trespassing; and (5) Harcourt's commission of an intentional tort entitles them to attorney fees and costs of litigation. For the reasons set forth below, we affirm.

"A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Punctuation omitted.) *Miller v. Miller.*[1] Viewed in that light, the record shows that the parties to this appeal are

---

[1] *Miller v. Miller*, 262 Ga. App. 546 (586 SE2d 36) (2003).

owners of adjoining real property in Coweta County, Georgia. Raymond B. Harcourt owns 123.7 acres of rural land which he purchased from Robert J. Teasley and Brenda W. Teasley (the "Teasleys") in December 1982. The Duncans own 15.8 acres, which they purchased from Douglas I. Kirkland and Lynn B. Kirkland (the "Kirklands") in September 1994. The Kirklands bought their property from the Teasleys in 1985.

Harcourt's property and the Duncans' property are separated by a fence which was in place before 1965. The fence is composed of wooden, concrete, and steel posts, connected with wire. For most of its length, the fence runs on the south side of a creek; however, in the northwest corner of Harcourt's property, the fence jogs north across the creek, carving out an area of approximately 40 square feet. In this offset area, the wire connecting the fence posts is growing three to four inches inside the tree trunks. At the time Harcourt bought the property from the Teasleys in 1982, Robert Teasley took Harcourt over the land and showed him the area created by the jog in the fence. Teasley explained that the fence in the northwest corner was not straight because an offset had been made so that cattle on the south side of the creek would have access to the water. Teasley also told Harcourt that he had bought the tract he was selling to Harcourt in 1965 from Jack Davis and that the fence creating the offset was already in place at that time.

Teasley bought the tract he sold to the Kirklands in 1974. The sale of that property was accompanied by an affidavit of possession signed by one of the sellers of the property in which she stated "that most of the property lines on said tract of land have been fenced in for over twenty years and that there have been no adverse claims of any kind to my knowledge on the above described tract of land and that the boundaries as set out above are recognized by the surrounding property owners."

In January 2002, the Duncans sent a letter to Harcourt demanding that he remove the fence on the north side of the creek. Harcourt responded, stating that the fence had been in place for more than 30 years and offering to discuss the matter. The Duncans refused to meet with Harcourt; instead, they filed a complaint against Harcourt for ejectment and criminal trespass. The complaint, originally filed in the magistrate court, was transferred to the Superior Court of Coweta County. In June 2003, the court granted summary judgment to Harcourt and denied partial summary judgment to the Duncans, finding that the fence in question had been in place for approximately 40 years and that affidavits of possession recorded in 1974 refer to the fence line as the boundary between the properties.

1. The Duncans argue that the trial court erred in granting summary judgment to Harcourt because affidavits of possession

recorded prior to the Duncans' predecessors in title cannot establish written title and boundaries by historical monuments. We find no merit to their argument.

In all cases of disputed land lines, the following rules set forth in OCGA § 44-4-5 apply:

> (1) Natural landmarks, being less liable to change and not capable of counterfeiting, shall be the most conclusive evidence; (2) [a]ncient or genuine landmarks such as corner stations or marked trees shall control the course and distances called for by the survey; (3) [i]f the corners are established and the lines are not marked, a straight line as required by the plat shall be run but an established marked line, though crooked, shall not be overruled; and (4) [c]ourses and distances shall be resorted to in the absence of higher evidence.

In determining what is an ancient landmark, OCGA § 44-4-6 states that "[g]eneral reputation in the neighborhood shall be evidence as to ancient landmarks of more than 30 years' standing."

The evidence established that the fence has been in place for more than 30 years and is, therefore, an ancient landmark whose location controls over the description in the deed in determining the boundary between the Harcourt and Duncan properties. Teasley testified that the fence was already in place in 1965 when he bought from Davis the tract which he later sold to Harcourt; the affidavit of possession indicates that the fence was a recognized boundary in the early 1950s. The general reputation of the fence as the dividing line between the Harcourt and Duncan properties was also evidenced by the affidavit of possession, which references the fence as being the boundary recognized by surrounding landowners. Further, it is clear that the affidavit of possession was filed and recorded with the deed for the purpose of clarifying that the fence line, and not the courses and distances in the deed, establishes the true property line. Finally, the affidavit of possession, recorded in the Duncans' chain of title, is notice to them that the fence is the boundary between the properties. The trial court did not err in granting summary judgment to Harcourt and denying partial summary judgment to the Duncans.

2. Given our holding in Division 1, it is clear that the Duncans' remaining enumerations of error have no merit.

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

Decided April 8, 2004 —
Reconsideration denied May 4, 2004 — 

Jeffrey W. Duncan, Kelley O. Duncan, *pro se.*
*Harwell, Brown & Harwell, Ronald H. Harwell,* for appellee.