A07A1476. DOVER v. HIGGINS et al.
(652 SE2d 829)

PHIPPS, Judge.

This case involves a dispute about a boundary line between property owned by Raymond Dover and property owned by Ernest Higgins and Meri Chris Pepper. The trial court entered judgment on a jury verdict in favor of Higgins and Pepper, and the court denied Dover's motion for new trial or judgment notwithstanding the verdict. Dover appealed and, for the reasons set forth below, we affirm.

---

In 1995, Dover bought property from G. A. Lawson through a warranty deed. In 2001, Dover obtained additional, adjoining property from Lawson through a quitclaim deed. The chain of title to these two pieces of property includes a 1918 deed, which describes the property by identifying all contiguous parcels of land bordering it. One such parcel is the Patterson parcel, described in a warranty deed from J. C. Smallwood to Holman Patterson (the "Patterson deed") through a series of calls based on monuments that existed in 1905. By the 1990s, some of these monuments no longer existed, making the boundary line described in the Patterson deed unclear. On May 14, 1998, Higgins and Pepper obtained the Patterson parcel from Otho Butler in part through a warranty deed and in part through a quitclaim deed. Butler chose this method of conveying the property because of the uncertainty concerning the boundary line.

Higgins and Pepper filed an action against Dover under OCGA § 23-3-61 to quiet title to their property, and Dover filed a counterclaim seeking to remove a cloud on his title to property. At a jury trial the parties attempted to establish the boundary line between the Dover property and the Higgins/Pepper property. This required an interpretation of the calls set out in the Patterson deed. Both sides presented evidence concerning the location of the monuments referenced therein, and both sides submitted plats that they argued reflected those monuments' locations. The parties also agreed on a verdict form that allowed the jury to determine the boundary line by: (a) finding that a plat submitted by Higgins and Pepper accurately showed the boundary line; (b) finding that a plat submitted by Dover accurately showed the boundary line; or (c) identifying a different boundary line by marking it upon one of the submitted plats.

The jury returned a verdict that the Higgins/Pepper plat accurately reflected the boundary line. The trial court entered judgment on this verdict. Dover then moved for a new trial or, alternatively, for judgment notwithstanding the verdict, arguing that Higgins and Pepper had failed to present evidence that the boundary line indicated on their plat complied with the monuments referenced in the Patterson deed. The trial court denied Dover's motion, holding that there was evidence to support the verdict and that, in any event, Dover had agreed to the special verdict form that allowed the jury to find that the Higgins/Pepper plat accurately reflected the boundary line.

1. Dover contends that the trial court should have granted his motion for new trial because the evidence and law did not support the jury verdict. He argues that the plat selected by the jury failed to accommodate monuments referenced in the Patterson deed as required under Georgia law.

The record contains the following description, taken from the Patterson deed,[1] of the property now owned by Higgins and Pepper and adjoining Dover's property:

> This tract of land and grist mill containing twelve acres more or less commencing at a stooping pine tree on the original line running northward a poplar on the branch, thence down the branch to the creek; thence to a rock corner on the public road; thence a straight line to the creek; thence down the creek to the mouth of the branch at the creek; thence [a] straight line to a rock corner below the mill; thence a straight line to the commencing corner all being in the 11th District part of Lot No. 5.

At trial, the parties disputed the location of certain of these calls, specifically the rock corner on the public road, the creek, the mouth at the creek's branch, and the rock corner below the mill.

The surveyor who prepared the Higgins/Pepper plat testified at trial that the purpose of the plat was to locate the monuments described in the Patterson deed, not to establish boundary lines. However, he identified possible locations of the public road (now out of use), the rock corner below the mill, the creek, and the branch, consistent with the Higgins/Pepper plat. Another surveyor testified as an expert for Higgins and Pepper concerning possible locations of the public road, the rock corner below the mill, the creek, and the branch, and he discussed how these locations related to the parties' plats. A neighbor who had lived on adjacent property for more than 30 years provided reputation evidence as to the location of the rock corner on the public road, also consistent with the Higgins/Pepper plat.

The surveyor who appeared as Dover's expert testified that the Higgins/Pepper plat did not correspond to the monuments set out in the Patterson deed. He specifically disputed the location of the rock corner on the public road and challenged Higgins's and Pepper's interpretation of the calls involving the rock corner below the mill and the creek and branch. Dover also offered reputation evidence concerning the monuments from former landowner Otho Butler and from a witness who, as a boy, had lived nearby and explored the property in the 1940s and 1950s.

Generally, where any evidence supports the finding of the trier of fact as to the location of markers in a boundary line dispute, the

---

[1] The handwritten description in the Patterson deed used archaic spelling and punctuation. The parties also entered into evidence this modern version of the description.

finding is not clearly erroneous and we will not disturb it on appeal.[2] "Traditional evidence as to ancient boundaries and landmarks shall be admissible in evidence, the weight to be determined by the jury according to the source from which it comes."[3] A jury may rely on testimony concerning the existence and location of artificial monuments in determining the location of a boundary line,[4] and "[g]eneral reputation in the neighborhood shall be evidence as to ancient landmarks of more than 30 years' standing."[5] Other evidence properly considered by a jury includes: acreage; the lack of any markers or monuments indicating a different boundary line; and the existence of old plats, drawings, field notes, and surrounding deeds consistent with the boundary line.[6] Where there is conflicting evidence concerning the location of a monument upon which a boundary line is based, the jury is authorized to fix the boundary in accordance with a survey that presumes the location of the contested monument.[7] The record reveals sufficient evidence to support the jury's finding under the "any evidence" standard.

Dover argues, however, that the verdict cannot stand as a matter of law because the boundary line as determined by the jury excludes from the Patterson parcel an ancient landmark mentioned in the Patterson deed, the grist mill, and he points to *Martin v. Patton*[8] as support for his position. *Martin* states that a trial court may not enter judgment on a jury verdict that conflicts with the laws governing the determination of boundary lines even if the verdict otherwise is supported by competent evidence.[9] Thus, the trial court in *Martin* erred when it entered judgment on a jury verdict that was supported by one form of evidence (as to acreage) but conflicted with a higher form of evidence (as to land lot lines).[10]

The statutory rules governing boundary line disputes provide that ancient landmarks are the best evidence for determining boundary lines aside from natural landmarks.[11] "Where a deed conveying a tract of land locates the boundaries by physical monuments, natural or artificial, such as public roads, and by courses and distances, and there is a discrepancy between the monuments and the courses and

---

[2] *Youngblood v. Youngblood*, 263 Ga. App. 820, 821 (1) (589 SE2d 602) (2003).

[3] OCGA § 24-3-13.

[4] *Sledge v. Peach County*, 276 Ga. App. 780, 783 (a) (624 SE2d 288) (2005).

[5] OCGA § 44-4-6.

[6] *Sledge*, supra at 784 (c), (d).

[7] *Smith v. Willoughby*, 207 Ga. 91, 96 (2) (60 SE2d 155) (1950).

[8] 225 Ga. App. 157 (483 SE2d 614) (1997) (physical precedent only).

[9] Id. at 167 (2).

[10] Id. at 166-167.

[11] OCGA § 44-4-5 (1), (2); see also *Sledge*, supra at 783 (a); *Duncan v. Harcourt*, 267 Ga. App. 224, 226 (1) (599 SE2d 196) (2004).

distances, the location of the monuments will prevail."[12] For the location of monuments to govern, however, there must be "satisfactory evidence that those monuments have been found, and, that they are still in their original places. . . ."[13]

Dover contends that the grist mill mentioned in the Patterson deed is an artificial monument that governs the location of the disputed boundary line and that a boundary line that excludes the grist mill from the Patterson parcel cannot stand. We note as a preliminary matter that the Patterson deed does not identify the grist mill as one of the calls determining the disputed boundary line, but instead lists the mill as property conveyed by the deed. Assuming that the provisions of OCGA § 44-4-5 determining boundary lines apply to monuments within the property but not upon a boundary line, we nevertheless find no error. The grist mill apparently no longer exists. Neither of the parties' plats reflects the mill. At trial, two of the surveyors testified to *not* knowing where it had stood, and the third surveyor merely presumed the mill's location based on the location of an old dam. None of the witnesses who provided reputation evidence testified as to the grist mill's location. Dover offered theories about where the grist mill likely had stood based on evidence concerning the location of a mill run, the dam, and the general topography of the land, but the location of the mill remained a question of fact and the jury was free to agree or disagree with Dover based on the evidence.[14]

The trial court did not err in accepting the jury verdict that determined the Higgins/Pepper plat established the boundary line.[15]

2. Citing *Clark v. Stafford*,[16] the trial court ruled that Dover could not challenge the sufficiency of the evidence supporting the Higgins/Pepper plat because he had agreed to a special verdict form that included that plat as an option for the jury. Dover contends that this ruling was in error. We disagree.

*Clark* involved a boundary line dispute in which the trial court "expressed its concern that, given the inadequacy of both parties' deeds, neither party might be able to prove that her proposed boundary line was in fact correct."[17] At Clark's request, the jury in

---

[12] *Barrett v. Dodd*, 206 Ga. 840 (1) (59 SE2d 395) (1950) (citations omitted); see also *Atlanta Trailer Mart v. Ashmore Foods*, 247 Ga. 254, 255 (1) (275 SE2d 336) (1981); *Lynburn Enterprises v. Lawyers Title Ins. Corp.*, 191 Ga. App. 710, 711 (382 SE2d 599) (1989).

[13] *Brantly v. Huff*, 62 Ga. 532, 536 (1879).

[14] See *Dye v. Dotson*, 201 Ga. 1, 4 (1) (39 SE2d 8) (1946) ("Disputed lines between adverse claimants of land, and questions of where old fences stood in the past, and how long they stood in certain locations, are peculiarly questions of fact for the jury.") (citation and punctuation omitted).

[15] See *Lewis v. Seabolt*, 209 Ga. 253, 254 (2) (71 SE2d 519) (1952).

[16] 239 Ga. App. 69 (522 SE2d 6) (1999).

[17] Id. at 71 (2).

that case was given a special verdict form requiring it to choose between plats proposed by the opposing parties. When the jury chose her opponent's plat, Clark moved unsuccessfully for new trial on the ground that no evidence supported the verdict. We rejected this argument, holding that "Clark cannot now complain that the jury lacked a sufficient basis to find in favor of Stafford."[18]

As in *Clark*, the parties here agreed to a special verdict form that allowed the jury to choose one of the proposed plats to establish the boundary line. Dover contends that our holding in *Clark* should not apply to this case. He argues that, unlike Clark, he did not initially suggest the special verdict form. But when the form was proposed, Dover's counsel agreed to it:

> Plaintiffs' Counsel: [Our pretrial order] says the only choices are, we find that the boundary line is on this plat, or we find the boundary . . . line is on this plat, or we find that the boundary line is on this plat where we have marked it. . . .
> The Court: Do you agree with that. . . ?
> Dover's Counsel: I do. . . . But they don't have to choose any particular plat. . . . If they want to draw a line with a green pen. . . . I think the court ought to instruct them that you can draw a line on the plat with a green pen. . . . So I think a green line would be the answer *or select a plat*. . . . I think they can choose any plat. In closing we will address what we think is the proper way to do it. . . . I think that's the way to resolve it.

(Emphasis supplied.) Dover could have objected to a verdict form that allowed the jury to accept the Higgins/Pepper plat on the ground that there was insufficient evidence to support a verdict based upon it, but he did not. Instead, when the court asked the parties to look over the verdict form to ensure that they agreed to its wording, Dover's counsel agreed to the form.

There is no merit in Dover's additional argument that *Clark* should not apply here because the jury in this case was not limited to the parties' proposed plats, but was given a third option of determining a different boundary.

"[A] party will not be heard to complain of error induced by his own conduct, nor to complain of errors expressly invited by him during the trial of the case."[19] Dover agreed to the special verdict

---

[18] Id. at 72.

[19] Id. at 72 (2) (citation and punctuation omitted); see also *Thrash v. Rahn*, 249 Ga. App. 351, 352 (2) (547 SE2d 694) (2001).

form, and under our holding in *Clark* he cannot now challenge the sufficiency of the evidence underlying a finding proposed by the verdict form.

3. Higgins and Pepper contend that Dover's appeal is frivolous, and they seek the imposition of a penalty pursuant to Court of Appeals Rule 15 (b). "Such a penalty may be imposed in cases where the appellant could have [had] no reasonable basis upon which to anticipate that this Court would reverse the trial court's judgment."[20] Higgins and Pepper argue that it was unreasonable for Dover to contend that the verdict should be overturned under the "any evidence" standard, but Dover also argued that the legal principles set out in *Martin* required the jury's verdict to be overturned as a matter of law. Although we reject Dover's arguments, it is not apparent that he made them unreasonably. Therefore, we deny the motion for frivolous appeal penalty.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 26, 2007 —
RECONSIDERATION DENIED OCTOBER 19, 2007

*Stewart, Melvin & Frost, Frank Armstrong III*, for appellant.
*Whelchel, Dunlap, Jarrard & Walker, Edgar B. Dunlap II, Madeline S. Wirt*, for appellees.

---

[20] *Griffiths v. Rowe Properties*, 271 Ga. App. 344, 345 (2) (609 SE2d 690) (2005) (citation omitted).